DON J. GILBREATH, APPELLEE, V. REECE E. RIDGEWAY,
APPELLANT.
360 N.W.2d 474
Filed December 21, 1984.   No. 83-744.

Winner, Nichols, Douglas and Kelly, for appellant.

James R. Hancock of James R. Hancock, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from the district court for Scotts Bluff County, Nebraska, sustaining the plaintiff's motion for summary judgment.

This case arises out of an agreement between Don J. Gilbreath, the seller, and Reece E. Ridgeway, the buyer, for the purchase and sale of 4,999 shares of the capital common stock of Scottana, Inc., a corporation owning the rights in and the business of operating a McDonald's restaurant in Scottsbluff, Nebraska. This appeal centers around the following provisions

contained in the "Agreement for the Sale of a Business" executed by the seller and buyer on August 19, 1977. In paragraph 2 of the agreement the buyer agreed to a purchase price for the shares of stock as follows:

A. The base purchase price shall be Five Hundred Fifty-one Thousand Two Hundred Fifty-Nine Dollars ($551,259.00) which shall bear interest at nine per cent (9%) per annum and if not paid or prepaid in accordance with this Agreement shall, nevertheless, as to any unpaid balance of principal and interest become due and payable on August 31, 1982, payable as follows:

B. The sum of Ten Thousand Dollars ($10,000.00) was paid on this date of execution.

C. The additional sum of Ninety Thousand Dollars ($90,000.00) shall be payable on closing.

D. The balance of Four Hundred Fifty-one Thousand Two Hundred Fifty-nine Dollars ($451,259.00) shall be payable in monthly installments which shall be equal to six per cent (6%) of the monthly gross sales of the principal business of the Corporation, "McDonald's Restaurant", located at 511 West 27th Street, Scottsbluff, Nebraska, computed as of the close of business on the last day of each month while this Agreement remains in effect and payble [sic] to the escrow agent hereinafter identified on the first day of the succeeding month. Such payments shall be applied first to accrued interest as is provided herein and the balance applied to reduce the principal amount of the indebtedness. Irrespective of the amount of gross sales, such payments shall not be less than Three Thousand Dollars ($3,000.00) for any month.

E. There shall be due on, but not before, January 1, 1978, the sum of Fifty-seven Thousand Dollars ($57,000.00) which shall be in addition to all other payments provided for herein.

F. There shall be due from BUYER to SELLER, in addition to the amounts of principal and interest

herein provided for, on or before September 30, 1977, the value, at cost, of all supplies and inventory in stock at "McDonalds Restaurant" in Scottsbluff, Nebraska, as of close of business of August 31, 1977.

G. Commencing 1979 and subsequent years, BUYER may prepay up to, but not in excess of, twenty per cent (20%) of the original principal balance in each year and any succeeding year until the balance of principal and accrued interest shall be payable as is provided hereinabove.

H. Subject to the approval of the bank, BUYER may assume the remaining principal balance due under a loan from Western National Bank unto Scottana, Inc., guaranteed by SELLER herein, and pay said note commencing with the first payment to be due on October 1, 1977, according to it's [sic] terms. In such event, all the amounts so assumed as of September 1, 1977, shall be deemed to reduce the purchase price hereinabove provided for in paragraph 2A. In such event, the payments due under paragraph 2D shall be monthly installments which shall be equal to three per cent (3%) of the monthly gross sales of said Corporation, so long as any amount remains payable pursuant to said loan so assumed. Also, minimum payments shall not be less than the interest computed on the remaining principal balance due hereunder under paragraph 2A herein.

Pursuant to paragraph 2B of the agreement, $10,000 was paid to the seller on the date of execution and $90,000 was paid on the closing date. On September 1, 1977, the buyer, as per paragraph 2H above, assumed notes for approximately $95,785.61. The buyer thereby had the right to reduce the amount of payments under the agreement from 6 percent to 3 percent of gross monthly sales, so long as such payments were not less than $3,000 as provided in paragraph 2D. From records admitted of both the buyer and seller, it appears that the buyer made regular payments of $3,000 to either the seller or Western National Bank from October 1977 through June 1980.

In July 1980 the buyer and seller entered into a modification

of the agreement without the assistance of counsel, whereby in consideration of a $50,000 note obtained by the buyer on favorable terms for the seller, the seller agreed to allow the buyer to deduct the sum of $1,733.27 from the monthly payments due to the seller from the buyer as repayment of the note. The notes assumed by the buyer and referred to in paragraph 2H of the original agreement were paid in full by October of 1980, at which time the payments due under the agreement became 6 percent of the buyer's gross monthly sales.

From the record it appears that the buyer continued to make payments to the seller through December of 1981. The record is silent as to any communication between the buyer and seller through 1982. However, on January 18, 1983, the seller, through his attorney, notified the buyer that he was in default of the agreement due to nonpayment and that the seller intended to exercise his right to accelerate the maturity of the unpaid balance due and owing under the agreement. The buyer, Ridgeway, responded to the notification on February 11, 1983, in a letter to the seller in which he enclosed a check in the amount of $44,349.59 "to bring all payments current through January 31, 1983" and to cure "any default that may have existed pursuant to [the] agreement." This tender was refused by the seller. On March 17, 1983, the seller petitioned the district court for the amount due and owing under the agreement.

The buyer, Ridgeway, contended before the district court and in this court that "[a]t no time did the parties agree that there would be a balloon payment due in August of 1982, but rather the payments were to continue to be paid monthly until paid in full." Brief for Appellant at 6.

In sustaining the seller's motion for summary judgment, the district court found that the contract between the parties was clear and unambiguous on its face and that it provided for the payment of the remaining principal and interest due under the contract on August 31, 1982. In a letter to the respective parties, accompanying the journal entry, Judge Robert O. Hippe went on to add that it appeared obvious that if sales at the restaurant were bad, the loan would never be paid, "[t]hus the need for a balloon provision. The full amount becoming due in only five years seems short, but that was the time picked by the

contracting parties." Although the appellant, Ridgeway, assigns numerous errors to this court, his chief contention is that the trial court erred in sustaining the seller's motion for summary judgment. We believe this contention to be without merit.

The purpose of a summary judgment is to pierce the allegations of the pleadings and to show conclusively that the controlling facts are other than alleged and that the moving party is entitled to judgment as a matter of law. *Strong v. K & K Investments*, 216 Neb. 370, 343 N.W.2d 912 (1984). A motion for summary judgment is to be granted only where there is no genuine issue of material fact or differing inferences to be drawn therefrom and that the moving party is entitled to a judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1979). When the provisions of a contract, together with the facts and circumstances that aid in ascertaining the intent of the parties thereto, are not in dispute, the proper construction of such a contract is a question of law and determinable upon a motion for summary judgment. *De Los Santos v. Great Western Sugar Co.*, 217 Neb. 282, 348 N.W.2d 842 (1984); *Bishop Cafeteria Co. v. Ford*, 177 Neb. 600, 129 N.W.2d 581 (1964); *Grantham v. General Tel. Co.*, 191 Neb. 21, 213 N.W.2d 439 (1973).

The appellant asserts that prior to the time of signing the agreement for the sale of the business, Gilbreath, the seller, stated to Ridgeway, the buyer, that the contract payments were to run at 6 percent of gross sales until paid. He further asserts that no mention of a balloon payment was made by Gilbreath or by his attorney. Appellant's assertion, however, ignores a general principle of contract law, that a written contract expressed in unambiguous language is not subject to interpretation or construction, and the parties' intention must be determined from its contents alone. *Kansas-Nebraska Nat. Gas Co. v. Swanson Bros.*, 215 Neb. 398, 338 N.W.2d 774 (1983). In this case the district judge had no other choice but to grant summary judgment on the issue of contractual liability for default or for failure to make the payment of the unpaid balance on the principal and interest according to the express language of the written sales agreement.

The appellant also assigns as error the trial court's failure to find that there existed a genuine issue of material fact as to the amount of payments made to the seller and the date that each payment was made, contending that such findings affect the amount of the unpaid balance adjudged to be due and owing under the agreement. We find this assignment of error to have merit. From our review of the record there appear to be discrepancies between Gilbreath's and Ridgeway's separate calculations and records of the amounts and dates of payments. Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the appellant, the party against whom the summary judgment is directed, we find that there exists a genuine issue of material fact concerning the amounts and dates of payments and the unpaid balance due to the seller. We therefore remand this case for further proceedings on the issue of damages.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.